**RUSKIN MOSCOU FALTISCHEK, P.C.**
1425 RXR Plaza
East Tower, 15th Floor
Uniondale, New York 11556
Telephone: 516.663.6600
Jacqulyn S. Loftin, Esq.
Adam L. Rosen, Esq.
*Counsel to the Debtors*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------x
In re

WILLIAM M. SCHIFFMILLER AND
ELIZABETH ARREGLADO ,

                                                            Debtors.
------------------------------------------------------------x

Chapter 11 (Subchapter V)

Case No. 26-10382 (DSJ)

## FIRST AMENDED PLAN OF REORGANIZATION UNDER SUBCHAPTER V OF CHAPTER 11 OF THE BANKRUPTCY CODE

William M. Schiffmiller and Elizabeth Arreglado (collectively, "Debtors"), as the debtors-in-possession, hereby propose the following first amended plan of reorganization ("Plan") under Subchapter V of Chapter 11 of Title 11 of the United States Code ("Bankruptcy Code").

## BACKGROUND

### A.       Description and History of Debtors' Financial Distress

On February 24, 2026 ("Petition Date"), the Debtors filed a voluntary petition for relief pursuant to Chapter 11 of the Bankruptcy Code in the U.S. Bankruptcy Court for the Southern District of New York ("Court"). The Debtors have elected to file this case under Subchapter V of Chapter 11 of the Bankruptcy Code, the Small Business Debtor Reorganization Act. The Debtors continue to operate and manage their property and affairs as debtors in possession pursuant to Bankruptcy Code sections 1107 and 1108. Charles N. Persing, CPA ("Trustee") was appointed as the Subchapter V Trustee.

The Debtors' financial distress and financial obligations primarily relate to their ownership and investment in two corporations, Akoio LLC and Akoio Enterprises Inc. ("Akoio Enterprises" and collectively, with Akoio LLC, "Akoio"). Akoio LLC owns the intellectual property for a certain hearing aid battery dispenser ("Dispenser"), including all domestic and international patents (collectively, "Akoio IP"), and functions as the licensor of the Akoio IP. Akoio Enterprises was established as the operating entity, responsible for production, fulfillment, marketing, and direct to consumer sales of the Dispenser, and operates as the licensee of the Akoio IP. The Dispenser is designed to make hearing aid batteries easier to change, carry, store, and safely manage after use. The Debtors own 100% of the equity interests in Akoio.

As set forth in the *Declaration of Willaim M. Schiffmiller Under Local Rule 1007-2 in Connection with Chapter 11 Filing*, dated February 24, 2026 (ECF 3), at least 50% of the Debtors' noncontingent, liquidated, secured and unsecured debts relate to the funding and operation of Akoio's business. The Debtors filed this case to (i) stay certain enforcement action by KeyBank National Association ("KB") relating to a judgment obtained by KB against Akoio and the Debtors, (ii) utilize the automatic stay under the Bankruptcy Code and attempt to resolve certain claims and restructure their debts, including substantial tax obligations, (iii) sell a condominium located at 583 Battery Street, Unit 3103N, Seattle, WA 98121 ("Condo"), and (iv) propose and confirm a reorganization plan which maximizes value for the Debtors' creditors and other parties in interest.

The Debtors reside in a rental apartment located at 75 West End Avenue, Apt. R36B, New York, New York 10023 ("NYC Apartment"). The Debtors are subject to a two-year lease that began on November 1, 2025, and will terminate on October 31, 2027 ("Lease").

### The KeyBank Judgment and Enforcement Actions

On February 10, 2025, KB filed an action against Debtors and Akoio in Superior Court Kings County Washington State (Case No. 25-2-04021), and on September 10, 2025, a judgment was entered against the Debtors and Akoio ("Judgment"). KB filed a proof of claim asserting a claim in the amount of $896,172.35 based upon two loans:

- Loan No. 1: Promissory Note dated December 3, 2021, in the original principal amount of $400,000.00; a loan made under the U.S. Small Business Administration's loan program which provides a partial guarantee to KB. This note was personally guaranteed by the Debtors by unconditional guarantees dated December 4, 2021.
- Loan No. 2: Promissory Note dated December 3, 2021, in the original principal amount of $500,000.00 evidencing a line of credit which was guaranteed by the Debtors by Commercial Guarantees dated December 3, 2021.
- Loan No. 2 also carries an SBA guaranty. Both notes are also secured by Commercial Security Agreements dated December 3, 2021, which granted KB a blanket lien on all assets of Akoio Enterprises. In connection with and to further secure Loan No. 1, the Debtors also provided KB with a Deed of Trust (a mortgage) in the principal amount of $400,000.00 encumbering the Condo. The Deed of Trust also cross – collateralizes Loan No. 2. Akoio Enterprises defaulted under both notes and KB exercised its remedies against that entity and the Debtors in state court in Washington.

On December 19, 2025, KB domesticated the judgments in the State of New York. On Loan No. 1, the total amount due as of entry of judgment in New York was $359,648.41. On Loan No. 2, the total amount due as of entry of judgment in New York was $556,595.25. With attorneys' fees, the total amount of the domesticated judgment against Debtors in New York as of December 10, 2025, was $933,422.02. The Judgment was entered on December 19, 2025.

On March 12, 2026, the Court entered the stipulation and order (ECF 30) by and between the Debtors and KB regarding release and turnover of certain funds contained in bank and investment accounts owned by the Debtors. As a result of the stipulation, KB retained approximately $37,000 and applied those funds to reduce its secured claim, and the Debtors

2

received approximately $5,000 which they used to pay expenses incurred during this chapter 11 case.

**B.      Tax Obligations**

The Debtors also are obligated to the Internal Revenue Service ("IRS") and New York State Department of Taxation and Finance ("NYS") for past-due taxes in unliquidated amounts. NYS has not filed proof of claim asserting a priority tax claim as the Debtors are in the middle of an audit to liquidate the amount owed. The Debtors have retained Capell Barnett Matalon & Schoenfeld LLP as special tax counsel to assist in the resolution of the amount of the unliquidated and disputed NYS tax claim. NYS has estimated the debt at approximately $800,000, to which the Debtors dispute. Again, this debt is subject to an audit and remains an unliquidated amount.

As set forth below, the Debtors also have $91,007.12 of priority tax claims filed by the IRS.

**C.      The Debtors' Assets and Expenses**

As a result of the protections afforded under the Bankruptcy Code, the Debtors have taken steps to unfreeze their bank and investment accounts, reduce their expenses, retain a real estate broker to market and sell the Condo, and formulate this Plan.

The Debtors' assets primarily consist of their personal income, the proceeds from the sale of the Condo, the cash value of certain life insurance policies, and any proceeds available from the sale of Akoio IP.

In late 2025, Akoio LLC retained a broker to assist in finding a buyer for the Akoio IP.  When the Akoio IP is sold, the Debtors from the gross proceeds will pay all the taxes related to the sale of the Akoio IP and the using the balance to pay  the debt owed by Akoio, including KB Judgment[1], with the remaining  balance of net proceeds, if any, to be paid to the Debtors (as sole equity holders) to fund the plan pursuant to Bankruptcy Code section 507.

In addition, the sale of the Seattle Condo as part of this plan will allow for greater disposable income for the Debtors to contribute to the plan.

The Debtors have filed all Schedules and Statements required by the Bankruptcy Rules, operating reports and have complied with all requests of the Office of the U.S. Trustee.

Summary of Debtors' Historical Financial Condition.[2]

Asset Summary

| Real Property | $1,445,000.00 |
|---|---|
| Cash and Deposits | $76,013.07[3] |

---

[1] The current debt of the Akoio entities, including the KB Judgment, is approximately $1,029,000.

[2] These figures are taken from the Debtors' Schedules of Assets and Liabilities and Statement of Financial Affairs. See ECF No. 1.

[3] According to the DIP account bank statement for May 2026.

| Life Insurance Cash Value | $10,000.00.00 |
|---|---|
| Proceeds from the sale of Akoio IP | $unliquidated value |
| **TOTAL** | **$1,531,013.07** |

Liability Summary

| Tax Debt | $800,000.00[4] |
|---|---|
| Secured Debt | $2,160,097.28 |
| Priority Unsecured Tax Debt | $91,007.12 |
| Nonpriority Unsecured Debt | $259,154.92 |
| **TOTAL DEBT** | **$3,310,259.32** |

Aggregate Income History

| 2024[5] | $545,585.00 |
|---|---|
| 2025 | $525,958.00 |
| 2026 (through Petition Date) | $150,314.00 |

**D.      Preference Claims and Objection to Claims**

The Debtors do not believe they have a basis to recover payments made to creditors on the theory that the payments were preferential transfers under Bankruptcy Code section 547. The Debtors reserve the right to file objections to claims subject to the provisions of this Plan.

**E.      Feasibility of the Plan**

Pursuant to Bankruptcy Code sections 1129(a)(11) and 1191(a), the bankruptcy court must find that confirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor, unless such liquidation or reorganization is proposed in the plan. The Debtors believe that they will have enough cash on hand on the Effective Date of the Plan to pay all the Claims and expenses that are entitled to be paid on that date. The Debtors' financial projections will demonstrate that the Debtors will have the Available Cash during the term of the Plan to make the required payments under the Plan.

---

[4]     NYS has not filed a claim in the Debtors' estate, but NYS and the Debtors are in the middle of an audit to resolve the NYS estimated claim of approximately $800,000. This claim is unliquidated and the Debtors dispute this claim.  After the conclusion of the audit, the Debtors will know the liquidated amount of the NYS claim.

[5]     Elizabeth Arregalado's 2024 income reflects compensation received during her employment with the NBA from June 2024 through June 2025. During this period, all compensation was provided in the form of cash salary and discretionary bonus. In November 2025, Ms. Arreglado began employment with Dataiku, whose compensation framework includes cash salary, discretionary bonus, and equity-based awards. A sizable portion of total compensation in her current role is delivered through equity rather than cash, and therefore cash income reportable for the 2025 tax year is materially lower than the amount reported for 2024.

To confirm the Plan, the Court must find that all Creditors who do not accept the Plan will receive at least as much under the Plan as such Claimants would receive in chapter 7 liquidation. The liquidation analysis annexed hereto as **Exhibit A** demonstrates that creditors will receive more under the Plan compared to liquidation.

If the Debtors were to immediately attempt to liquidate their assets, the liquidation value of their assets would not be sufficient to pay any meaningful recovery to general unsecured creditors. The Debtors have agreed to commit a substantial portion of their future income to make the payments required by this Plan.

The Debtors believe that creditor recoveries will be improved by allowing the Debtors to sell the Condo, liquidate the value of their life insurance policy, and attempt to sell the Akoio IP under the terms and conditions of this Plan.

**F.      Ability to Make Future Plan Payments
Without Further Reorganization**

The Debtors must demonstrate that they will have enough Available Cash over the duration of the Plan to make the required Plan payments and pay their living expenses. For purposes of satisfying this requirement, the Debtors have prepared projected financial information attached hereto as **Exhibit B**, which reflects that the Debtors will have projected disposable income (as defined by Bankruptcy Code section 1191(d)), for the period described in Bankruptcy Code section 1191(c)(2), to make the distributions to the creditors. **Exhibit B** reflects the monthly projection for the remainder of the year 2026.

### ARTICLE I

### SUMMARY

The Plan proposes paying the Debtors' creditors from Available Cash generated from the Debtors' wages and other income, the sale of the Condo, the sale of the Akoio IP and any other Akoi assets, and the cash value of their insurance policy.

The Plan provides for: (A) four (4) classes of secured claims; (B) one (1) class of priority claims; and (C) one (1) class of general unsecured claims.

The Debtors propose to pay the secured claims from the net proceeds received from the sale of the Condo. The Debtors propose to pay the Allowed Claims of the IRS and NYS in accordance with Bankruptcy Code section 507(a)(8), or upon such other terms that the Debtors and the IRS and NYS may agree upon.

The Debtors propose to pay their unsecured creditors quarterly payments starting on October 1, 2026, for a period of 20 quarterly payments. The Debtors estimate that unsecured creditors will receive distributions in between 0%-2%[6] of their Allowed general unsecured Claims.

---

6      The distribution to Class 6 general unsecured creditors is contingent upon: (i) the NYS claim audit, which the Debtors submit will either reduce or expunge the claim; and (ii) sale of the Akoio IP, the net proceeds of

All creditors should refer to Articles III through VI of the Plan for information regarding the precise treatment of their claim.

**ARTICLE II**

**CLASSIFICATION OF CLAIMS AND INTEREST**

2.01    **Class 1 Claim – Priority Non-Tax Claims**.

The Debtors believe that there are no priority non-tax Claims. To the extent that there are Allowed priority non-tax Claims, the Debtors will pay them in full on the Effective Date.

2.02    **Class 2 Claim - UBS Secured Claim**.

UBS Bank USA ("UBS") holds a first mortgage against the Debtors' interest in the Condo in the approximate amount of $992,993.93.

2.03    **Class 3 Claim – KeyBank Claim**.

KB holds a second mortgage against the Debtors' interest in the Condo in the approximate amount of $340,000. KB also holds an undetermined Class 5 unsecured claim for any balance owed to KB after payment of the UBS Class 1 Claim, and the reasonable costs of sale, from the available proceeds of the sale of the Condo.

2.04    **Class 4 Claim – Mass Mutual Claim**.

Mass Mutual Life Insurance Company ("Mass Mutual") holds a secured Claim with respect to a loan made against a certain life insurance policy owned by the Debtors (policy number ending 3237). As of the Petition Date, the cash value of the policy was $10.000.00 and the total loan amount secured by the policy was $210,636.41, plus interest of $6,052.46 and monthly premium amounts owed to keep the policy current. The Debtors intend to cancel the policy and pay the outstanding loan amount in full. This will result in the Debtors receiving approximately $10,000.00 which will be used to fund the Debtors' obligations during this case and the distributions under the Plan.

2.05    **Class 5 Claim-Internal Revenue Claim**.

The IRS filed a secured claim in the amount of $407,560.39, designated as Claim 6-1. The claim consists of a tax due in the amount of $270,931, penalties to the petition date of $70,985.72 and interest to the petition date of $65,643.67.  The IRS and the Debtors have agreed to bifurcate as follows: (i) $270,931.00 shall remain as a secured claim; (ii) interest in the amount of $65,643.67 shall now be unsecured priority claim (with $25,372.45); and (iii) penalties in the amount of $70,931.00 shall be a general unsecured claim (Class 6).

---

which will be used to fund the plan.

6

2.06   **Class 6 Claims – General Unsecured Claims**.

Class 5 Claims consist of the Allowed general unsecured Claims filed against the Debtors' estate. The Debtors propose to pay their unsecured creditors quarterly payments starting on October 1, 2026, for a period of 20 quarterly payments in the total amount of approximately 0%-2%.[7]

## ARTICLE III

## TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS, PRIORITY TAX CLAIMS AND COURT FEES

3.01   **Unclassified Claims**. – Pursuant to Bankruptcy Code section 1123, statutory fees, administrative expense claims and priority tax claims are not classified.

3.02   **Administrative Expense Claims**. – Each holder of an administrative expense claim Allowed under Bankruptcy Code section 503 will be paid in full on the Effective Date of the Plan or upon such other terms as may be agreed upon by the holder of the claim and the Debtors. The Administrative Claims are as follows[8]:

| Name | Title | Amount |
|---|---|---|
| Ruskin Moscou Faltichek, P.C. | Counsel to Debtors | Fees: $95,000.00 Expenses: $200.00 |
| RK Consultants LLC | Financial Advisor to Debtors | Fees: $12,000.00 Expenses: $0.00 |
| Capell Barnett Matalon 7 Schoenfeld LLP | Special Tax Counsel to Debtors | Fees: $10,000.00 Expenses: $0.00 |
| Charles N. Persing, CPA | Subchapter V Trustee | Fees: $8,000.00 Expenses: $0.00 |

3.03   **Priority Tax Claims**. – Each holder of a priority tax claim Allowed under Bankruptcy section 507(a)(8) will be paid over a five (5) year period in accordance with Bankruptcy Code section 1129(a), at the prime rate of interest as published by the Wall Street Journal, or similar publication, or pursuant to such other terms as may be agreed upon by the holder of the claims and the Debtors. The holder of Priority Tax Claim shall not be entitled to vote on the Plan.

---

7   The distribution to Class 6 general unsecured creditors is contingent upon: (i) the NYS claim audit, which the Debtors submit will either reduce or expunge the claim; and (ii) sale of the Akoio IP, the net proceeds of which will be used to fund the plan.

8   These amounts are estimated amounts and subject to Court approval.

3.04   **Statutory Fees**. – All fees and charges required to paid under 28 U.S.C. § 1930, including any applicable interest, shall be fully paid on the Effective Date. Such fees, together with any applicable interest thereon, that may become due after the Effective Date of the Plan shall be paid as they become due by the Reorganized Debtors until this case is closed, dismissed, or converted to another chapter of the Bankruptcy Code.

## ARTICLE IV

## TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN

4.01   Claims and interests shall be treated as follows under the Plan:

| Class | Impairment | Scheduled/Filed Amount | Treatment |
|---|---|---|---|
| Class 1 – Priority Non-Tax Claims | Unimpaired | $0 | The Debtors believe that there are no priority non-tax Claims. To the extent that there are Allowed priority non-tax Claims, the Debtors will pay them in full on the Effective Date.<br><br>The holders of Class 1 Claims are unimpaired and therefore are deemed to have voted to accept the Plan. |
| Class 2 – Secured Claim of UBS | Unimpaired | $992,933.93 | Class 2 consists of the secured Claim of UBS which is secured by a first-priority mortgage on the Condo. The Debtors expect the Class 2 Claim will be paid in full upon the closing of the sale of the Condo and, therefore, the holder of the Class 2 Claim is unimpaired, and is deemed to have voted to accept the Plan. |
| Class 3 – Secured Claim of KB | Impaired | $896,172.35 | Class 3 Secured Claim of KB which holds a second-priority mortgage on the Condo. The Class 3 Claim will be paid net proceeds from the sale of the Condo, after payment of the reasonable expenses of such sale, and the payment in full of the Class 2 Claim of UBS. KB Is projected to receive approximately $340,000 from sale of the Seattle Property with the balance of its claim becomes a GUC claim.<br>To the extent that the Akoio IP, or any other asset of Akoio, is sold during the duration of the Plan then, after payment of the reasonable expenses of such sale, the net proceeds of such sale shall be paid to KB on account of the Judgment and claims against Akoio.<br>The holder of the Class 3 Claim is impaired and entitled to vote on the Plan. |

8

| Class | Impairment | Scheduled/Filed Amount | Treatment |
|---|---|---|---|
| Class 4- Secured Claim of Mass Mutual | Unimpaired | $182,000 (estimated) | Class 4 Claim of Mass Mutual is a secured claim based on a loan against the cash value of the Debtors' life insurance policy. The Debtors intend to cancel the policy and use the proceeds of the policy to pay Mass Mutual's claim in full. The holder of Class 4 Claim is unimpaired and therefore are deemed to have voted to accept the Plan. |
| Class 5-Secured Claim of IRS | Unimpaired | $270,931.00 | The IRS filed a secured claim in the amount of $407,560.39, designated as Claim 6-1. The claim consists of a tax due in the amount of $270,931, penalties to the petition date of $70,985.72 and interest to the petition date of $65,643.67.  The IRS and the Debtors have agreed to bifurcate as follows: (i) $270,931.00 shall remain as a secured claim; (ii) interest in the amount of $65,643.67 shall now be an unsecured priority claim (with $25,372.45); and (iii) penalties in the amount of $70,931.00 shall be a general unsecured claim (Class 6). The holder of Class 4 Claim is unimpaired and therefore are deemed to have voted to accept the Plan. |
| Class 6 Claims-General Unsecured Creditors | Impaired | $259,154.92 | The holders of Class 5 Claims will receive their *pro rata* portion of Available Cash for the duration of the Plan. The Debtors estimate that Class 5 claimants will receive distributions of 0%-2%[9] on their Allowed Claims. The holders of the Class 5 Claims are impaired and entitled to vote on the Plan. |

## ARTICLE V

## ALLOWANCE AND DISALLOWANCE OF CLAIMS

5.01   **Objections to Claims**. The Debtors may object (or prosecute any pending objections) to any Claim filed prior to confirmation of the Plan after the Effective Date. Any Claim subject to an objection which has not been adjudicated by Final Order or otherwise resolved prior to Confirmation will be treated as a Disputed Claim under the Plan. Any further objections to Claims shall be filed by the Debtors no later than ninety (90) days after the Effective Date, which

---

[9]   The distribution to Class 6 general unsecured creditors is contingent upon: (i) the NYS claim audit, which the Debtors submit will either reduce or expunge the claim; and (ii) sale of the Akoio IP, the net proceeds of which will be used to fund the plan.

deadline may be extended by the Court upon application or motion of the Debtors without notice filed prior to the deadline. If any proof of claim is filed, asserted, or amended after the Effective Date, the Debtors shall have ninety (90) days from the date of such filing or notice to object to such claim, which deadline may be extended by the Court upon application or motion of the Debtors without notice made prior to the deadline. All objections shall be litigated (or settled) to Final Order. The Court shall retain jurisdiction to adjudicate all objections to claims whether filed prior to or after the Effective Date.

5.02   **Distributions on Allowed Claims and Disputed Claims**.

Delivery of Distributions in General.

Subject to Bankruptcy Rule 9010, and except as otherwise provided herein, distributions to holders of Allowed Claims shall be made by the Distributing Agent at (a) the address for each holder of an Allowed Claim as set forth in the Schedules, unless superseded by the address set forth on the proof of Claim filed by such holder, or (b) the last known address for such holder if no proof of Claim is filed, or if the Debtors, or the Distributing Agent, has been notified in writing of a change of address.

Nothing herein shall require or be deemed to require the Debtors or the Distributing Agent to attempt to locate any holder of an Allowed Claim.  Distributions shall be made in accordance with the provisions of the Plan and may be made in one or more payments or deliveries.

1.      Undeliverable Distributions and Unclaimed Property.

If any distribution is returned as undeliverable, the Debtors or the Distributing Agent may, in their sole discretion, make such efforts to determine the current address of the holder of the Claim with respect to which the distribution was made, but no distributions to any holder of an Allowed Claim will be made until the Debtors or the Distributing Agent has determined the current address of the holder of such Allowed Claim, at which time the distribution will be made without interest. The Debtors and the Distributing Agent shall have the discretion to determine how to make distributions in the most efficient and cost-effective manner.

Amounts in respect of any undeliverable distributions made by the Debtors or the Distributing Agent shall be returned to, and held in trust by, the Debtors or the Distributing Agent, until the distributions are claimed, or are deemed to be unclaimed property upon the expiration of three (3) months from the date of the return of the undeliverable distribution. Unclaimed Property shall be utilized by the Debtors or the Distributing Agent to make additional distributions in accordance with the provisions of the Plan.

**ARTICLE VI**

**PROVISIONS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

6.01    Except for the assumption of the Lease for the NYC Apartment and set forth in this Plan, all other executory contracts or unexpired leases to which the Debtors is a party as of the Effective Date which were not previously rejected, assumed, or assumed and assigned by the

Debtors shall be deemed rejected under the Plan as of the Effective Date in accordance with the provisions and requirements of Bankruptcy Code sections 365.

6.02     **Claims Based on Rejection of Executory Contracts or Unexpired Leases**. All proofs of claim with respect to any Claims arising from the rejection of executory contracts or unexpired leases must be filed with the Court within thirty (30) days after the date of the order confirming this Plan. The failure of any such counter party to file a proof of claim within the period proscribed shall forever bar it from asserting against the Debtors or their estate any claim for damages arising from the rejection of their executory contract or unexpired lease with the Debtors. The filing of any such proof of claim shall be without prejudice to all rights that the Debtors may have to object to the allowance thereof on all available grounds.

**ARTICLE VIII**

**DEFAULT PROVISIONS**

8.01     With respect to the IRS and NYS, if the Debtors or the Reorganized Debtors fail to (a) make any deposit or payment of any (1) tax obligation accruing after the Confirmation Date, or (2) payment required under this Plan by the due date of such deposit or payment, or (b) file any required federal or New York State tax return by the due date of such return, then the IRS or NYS may declare that the Debtors are in default under the Plan, upon written notice to the Debtors and their counsel, and notification of a reasonable time period in which the Debtors may cure the default. Failure to declare a default does not constitute a waiver by the United States or New York State of the right to declare that the Debtors are in default. If the United States or New York State declare the Debtors to be in default and full payment is not made or any required return is not filed within thirty (30) days of such written notice, or as extended by the parties, then the entire imposed liability, together  with any unpaid current liabilities, shall become due and payable immediately, the IRS or NYS may collect any unpaid liabilities through the administrative collection provisions of the Internal Revenue Code or by any other procedure authorized by law, and any automatic stay under Bankruptcy Code section 362(a) in effect is lifted for this purpose without further order of the Court.

8.02     With respect to all creditors, in the event the Debtors fails to make any payments required under the Plan, upon written receipt from any creditor of a notice of such default, the Debtors will have thirty (30) days from receipt of such notice to cure such default and during such 30-day period, such creditor shall take no action with respect to the Plan or the Debtors. If such default is cured within the 30-day period, then the Plan will continue in full force and effect. Notice of any such default must be sent to the Debtors by email and national overnight delivery service to the following address: Ruskin Moscou Falitchek, P.C., counsel for the Debtors, 1425 RXR Plaza East Tower, 15th Floor, Uniondale, New York 11556, Attn: Jacqulyn Loftin (jloftin@rmfpc.com).

8.03     In the event the default is noticed and not cured in accordance with Sections 8.01 and/or 8.02, as applicable, the remedies for any such creditor include, without limiting Sections 8.01 and/or 8.02, seeking (a) enforcement of the Plan in the Court, (b) the liquidation of the Debtors' nonexempt assets, and/or (c) such remedies available under applicable state law.

## ARTICLE IX

## <u>GENERAL PROVISIONS</u>

9.01   **<u>Definitions and Rules of Construction</u>**. The definitions and rules of construction set forth in Bankruptcy Code sections 101 and 102 shall apply when terms defined or construed in the Bankruptcy Code are used in this Plan, and they are supplemented by the following definitions:

(i)      "Allowed" or "Allowed Claim" means any Claim or Interest against the Debtors that is scheduled by or on behalf of the Debtors as not disputed, contingent or unliquidated, or proof or request for payment of which has been filed timely with the Court and, in either case, a Claim (a) as to which no objection has been interposed within ninety (90) days after the Effective Date or (b) as to which an objection has been interposed and such Claim has been allowed by a Final Order of the Court.

(ii)     "Available Cash" means the funds held by the Debtors from their wages, other income, the sale of the Akoio IP and any other Akoio assets, any tax refunds, and cash value from insurance policies, and less the Debtor's reasonable living expense pursuant to the Debtors' projected financial information attached hereto as **<u>Exhibit B</u>**.

(iii)    Bankruptcy Code" means Title 11 of the United States Code (11 U. S.C. §§ 1101, *et seq.*).

(iv)     "Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure as in effect on the Petition Date and as amended after the Petition Date and during the Debtors' chapter 11 case.

(v)      "Claim" means any right to payment from the Debtors arising, or with respect to which the obligation giving rise to such right has been incurred, before the Effective Date of this Plan, and based upon, concerning, relating to, or in any manner arising from, in whole or in part, the Debtors and/or the Debtors' guarantee obligations of Akoio debts, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or any right to an equitable remedy for breach of performance arising, or with respect to which the obligation giving rise to such right has been incurred, before the Effective Date, if such breach gives rise to a right to payment from the Debtors, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured. FOR THE AVOIDANCE OF DOUBT, "CLAIM" SHALL SPECIFICALLY AND EXPRESSLY INCLUDE ALL CLAIMS UNDER FEDERAL, STATE AND/OR LOCAL LAW OR REGULATION.

(vi)     "Confirmation Date" means the date of entry of the Confirmation Order by the Court.

(vii)    "Confirmation Order" means the order of the Court confirming the Plan in accordance with Bankruptcy Code section 1191 and other application sections.

(viii)   "Disputed Claim" means (a) any Claim that is listed in the Schedules as disputed, contingent or unliquidated and with respect to which no Proof of Claim has been filed; and (b) any Claim, or portion thereof, that has not been disallowed and with respect to which an objection or action concerning the allowance and/or extent thereof, in whole or in part, has been interposed within the applicable period of limitation fixed by this Plan, the Bankruptcy Code, the Bankruptcy Rules or the Court, to the extent that any such objection or action has not been resolved by a Final Order.

(ix)   "Debtors' Professionals" or "Professionals" means such attorneys, accountants and/or other professionals employed by the Debtors in connection with this case.

(x)   "Disbursing Agent" means the Reorganized Debtors.

(xi)   "Effective Date" means the first business day following the date that is fourteen (14) days after the entry of the Order confirming this Plan. If, however, a stay of the Confirmation order is in effect on that date, the Effective Date will be the first business day after the date on which the stay expires or is otherwise terminated.

(xii)   "Final Order" means an order of a court as to which (a) any appeal that has been taken has been determined finally or dismissed or (b) the time for appeal has expired and (i) no timely appeal has been filed and (ii) no order having the effect of tolling or otherwise extending the appeal period is in effect.

(xiii)   "Pro Rata Distribution" means, with respect to any Allowed Claim, the proportions that such Allowed Claim bears to the aggregate amount of all claims in such class.

(vii)   "Reorganized Debtors" means the Debtors after entry of the Confirmation Order.

9.02   **Authority to Effectuate Plan**. Upon the Confirmation Order becoming a Final Order, all matters provided under the Plan shall be deemed to be authorized and approved without the requirement of further approval from the Court or the Debtors. The Debtors shall be authorized, without further application to or order of the Court to take whatever action necessary to achieve consummation and carry out the Plan and to effectuate the transactions provided for thereunder, including sale of the Condo.

9.03   **Revesting of Assets**. Consistent with Bankruptcy Code sections 1123(a)(5)(A) and 1141, and except as may otherwise be provided in this Plan, title to all assets and property of the estate of the Debtors shall pass to, and vest in, the Reorganized Debtors free and clear of all Claims, Liens, charges, and other rights of creditors arising prior to the Effective Date. On and after the Effective Date, the Reorganized Debtors may conduct their financial affairs and may use, acquire, and dispose of property free of any restrictions of the Bankruptcy Code, the Bankruptcy Rules, and the Court, except as otherwise provided in this Plan or in the Confirmation Order. Any distribution check that is issued by the Debtors but not deposited within one hundred twenty (120) days after its distribution will be deemed abandoned by such creditor and shall pass to and revert in the Reorganized Debtors free and clear of any claims to the distribution.

9.04   **Retention of Jurisdiction.** Following the Confirmation Date and until such time as all payments and distributions required to be made and all other obligations required to be performed under the Plan have been made and performed and the final decree has been entered closing the Debtors' Chapter 11 case, the Court shall retain jurisdiction over this proceeding under the provisions of the Bankruptcy Code, including, without limitation, Bankruptcy Code section 1142(b) thereof and the Bankruptcy Rules, to ensure that the intent and the purpose of the Plan is carried out and given effect. Without limitation by reason of specification, the Court shall retain jurisdiction for the following purposes:

(a)    To consider any modification of the Plan pursuant to Bankruptcy Code section 1127 and/or any other modification of the Plan after substantial consummation thereof; and

(b)    To hear and determine:

(i)    all controversies, suits and disputes, if any, as may arise in connection with the interpretation, implementation, consummation or enforcement of the Plan;

(ii)    all controversies, suits and disputes, if any, as may arise between or among the holders of any Class of Claim and the Debtors including, without limitation, proceedings to determine the allowance, classification, amount, or priority of Claims;

(iii)    all rights or Causes of Action which may exist on behalf of the estate, including actions commenced to recover preferential transfers, accounts receivable and other property of the estate;

(iv)    applications for allowance of compensation and expense reimbursement of the Debtors' Professionals, and the Trustee, for periods prior to the Effective Date;

(v)    All applications, adversary proceedings and litigated matters;

(vi)    to enter a final decree closing the Debtors' chapter 11 case; and

(vii)    to the extent not expressly provided for above, all disputes arising under the Plan and proceedings in aid of the administration and/or consummation of the Plan.

9.05   **Headings**. Headings are used in the Plan for convenience of reference only and shall not constitute a part of the Plan for any other purpose.

9.06   **Revocation**. The Debtors shall have the right to revoke or withdraw the Plan at any time prior to the Confirmation Date. If the Plan is revoked or withdrawn, it shall be deemed null and void, and in such event, nothing contained herein shall be deemed to constitute a waiver or

14

release of any Claim by or against the Debtors, or any other entity, or to prejudice in any manner, the rights of the Debtors or any entity in any further proceeding involving the Debtors.

9.07    **Successors and Assigns**. The rights, benefits and obligations named or referred to in the Plan shall be binding on and shall inure to the benefit of the Debtors and all holders of Claims and Interests, their respective successors and assigns. The provisions of all documents executed under or in connection with this Plan shall be valid and enforceable and binding upon and inure to the benefit of the Debtors and all other parties thereto and their respective predecessors, successors, assigns, agents, officers and directors.

9.08    **Governing Law.** Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and the Bankruptcy Rules), the laws of the State of New York shall govern the construction and implementation of the Plan and, unless otherwise stated therein, any agreements, documents, and instruments executed in connection with the Plan.

9.09    **Saturday, Sunday or Legal Holiday.** If any payment or act under the Plan is required to be made or performed on a date that is not a business day, then the making of such payment or the performance of such act may be completed on the next succeeding business day, but shall be deemed to have been completed as of the required date.

9.10    **Enforceability**. Should any provision in the Plan be determined to be unenforceable, such determination shall in no way limit or affect the enforceability or operative effect of all other provisions of the Plan.

9.11    **Plan Controls**. To the extent, the Plan is inconsistent with the Order confirming the Plan, the provisions of the Order shall be controlling.

9.12    **Reservation of Rights**. Neither the filing of the Plan nor any statement or provision contained therein shall be or be deemed to be an admission against interest. If the Effective Date shall not occur, neither the Plan nor any statement contained therein may be used or relied upon in any manner in any suit, action, proceeding, or controversy within or outside of the Debtors' chapter 11 case.

9.13    **Substantial Consummation**. The Plan will be deemed substantially consummated, as such term is used in Bankruptcy Code section 1101(2), upon the commencement of distributions to the holder of any Class of Claims under the Plan. Following such substantial consummation, any appeal, rehearing or other post-confirmation motion of any nature with respect to the Plan or the Confirmation Order except as specifically provided herein or therein shall be rendered moot and no longer justiciable.

9.14    **Final Decree**. The Debtors will file on notice to the United States Trustee, an application and proposed order for a final decree pursuant to Bankruptcy Rule 3022, without prejudice to the Court's ability to reduce or extend the time to file such application.

## ARTICLE X

## <u>DISCHARGE; LIMITATION OF LIABILITY</u>

10.01  **<u>Discharge</u>**. (a) If this Plan is confirmed under Bankruptcy Code section 1191(a), on the Effective Date of the Plan, the Debtors will be discharged from any debt and/or Claim that arose before confirmation of this Plan, to the extent specified in Bankruptcy Code section 1141(d)(1)(A), except that the Debtors will not be discharged of any debt:

(i)      imposed by this Plan; or

(ii)     to the extent provided in Bankruptcy Code section 1141(d)(6).

10.02  If this Plan is confirmed under Bankruptcy Code section 1191(b), the Sub Chapter V Trustee shall remain in his capacity and confirmation of this Plan does not discharge any debt provided for in this Plan until the Court grants a discharge on completion of all payments due within the first five (5) years of the term of this Plan, or as otherwise provided in Bankruptcy Code section 1192. The Debtors will not be discharged of any debt:

(i)      on which the last payment is due within the five (5) year term of this Plan, or as otherwise provided in Bankruptcy Code section 1192; or

(ii)     excepted from discharge under Bankruptcy Code section 523(a), except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

10.03  **<u>Continuation of Stays.</u>** All stays provided for in the chapter 11case shall be governed by Bankruptcy Code section 362(c)(2) and the automatic stay shall remain in place until the earliest of: (A) the time the case is closed; or (B) the time the case is dismissed.

10.04  **<u>Injunction</u>**. Effective on the Confirmation Date, all creditors who have held, hold, or may hold Claims against the Debtors or their assets are enjoined from taking any of the following actions against or affecting the Debtors or the assets of the Debtors with respect to such Claims (other than actions brought to enforce any rights or obligations under the Plan or appeals, if any, from the Confirmation Order): (i) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind against the Debtors or the assets of the Debtors; (ii) enforcing, levying, attaching, collecting or otherwise recovering by any manner or means whether directly or indirectly any judgment, award, decree or order against the Debtors or their assets; (iii) creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against the Debtors or the assets of the Debtors; (iv) asserting any set-off, right of subrogation or recoupment of any kind directly or indirectly against any obligation due the Debtors or their assets; and (v) proceeding in any manner in any place whatsoever that does not conform to or comply with the provisions of the Plan.

10.05  **<u>Limitation of Liability</u>**. The Debtors and their Professionals shall have or incur no liability to the extent allowed under Bankruptcy Code section 1125(e) and, in all respects, the Debtors and their Professionals shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan. Nothing in the Plan shall limit the liability of the

Professionals of the Debtors for malpractice to their respective clients pursuant to N.Y. Comp. Codes R. & Regs. Title 22, Section 1200.0, Rule 1.8(h)(1) nor release any party for any claims of fraud, *ultra vires* acts, gross mismanagement, or willful misconduct,  Additionally, the Plan shall not release or exculpate any person or entity from any Claim or cause of action existing as of the Effective Date: (i) based on the Internal Revenue Code or other domestic state, city or municipal tax code; (ii) based on the environmental laws of the United States or any domestic state, city or municipality; (iii) based on any criminal laws of the United States or any domestic state, city or municipality; and (iv) based on the Securities Exchange Act of 1934, as now in effect or hereafter amended, the Securities Act of 1933, as now in effect or hereafter amended, or other securities laws of the United States or any domestic state, city, or municipality.

## ARTICLE XI

## CONFIRMATION REQUEST

11.01   The Debtors hereby request confirmation of the Plan pursuant to Bankruptcy Code sections 1129 and 1191.

Respectfully submitted,

Dated: June 5, 2026
New York, New York

*s/ William M. Schiffmiller*
William M. Schiffmiller
*Debtor and Debtor-in-Possession*


*s/ Elizabeth Arreglado*
Elizabeth Arreglado
*Debtor and Debtor-in-Possession*

Dated:   June 5, 2026
Uniondale, New York

**RUSKIN MOSCOU FALTISCHEK, P.C.**
*Counsel to the Debtors-in-Possession*

*s/ Jacqulyn S. Loftin*
Jacqulyn S. Loftin, Esq.
Adam Rosen, Esq.
1425 RXR Plaza
East Tower, 15th Floor
Uniondale, New York 11556
Telephone: 516-663-6600
JLoftin@rmfpc.com

17